IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON PUMPHREY | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-11-CV-0624-N-BD |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Petitioner Jason Pumphrey, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of capital murder of a child under six years of age.  Because the state did not seek the death penalty, punishment was assessed at a mandatory life sentence. Petitioner challenged his conviction and sentence on direct appeal and state collateral review.  The state court of appeals affirmed.  *Pumphrey v. State*, No. 05-06-00726-CR, 2007 WL 2052159 (Tex. App. -- Dallas, Jul. 19, 2007, pet. ref'd).  The Texas Court of Criminal Appeals denied post-conviction relief on the findings of the trial court.  *Ex parte Pumphrey*, WR-75,290-01 (Tex. Crim. App. Feb. 23, 2011).  Petitioner then filed this action in federal district court.

II.

As best the court understands his claims, petitioner appears to contend that: (1) the evidence was insufficient to support his conviction; (2) he received ineffective assistance of counsel; and (3) he is actually innocent.[1]

A.

In multiple grounds for relief, petitioner argues that the evidence was both legally and factually insufficient to support his conviction for the murder of his five year old stepdaughter. At trial, the child's mother testified that she caused the death of her daughter and claimed that petitioner was not responsible. Notwithstanding those admissions, the jury convicted petitioner of capital murder. Petitioner now contends that the state failed to prove his guilt either as a principal or under the law of parties.

1.

A federal court may not disturb a state criminal conviction unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991), *cert. denied*, 113 S.Ct. 102 (1992). The evidence must be viewed in the light most favorable to the verdict. *See Jackson*, 99 S.Ct. at 2789; *Gibson*, 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *See Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir.), *cert. denied*, 111 S.Ct. 265 (1990).

Federal courts are bound by state statutes and case law in determining the elements of an offense. *See Foy v. Donnelly*, 959 F.2d 1307, 1314 (5th Cir. 1992). Under Texas law in effect at

---

[1] In his original writ and supporting brief, petitioner also argued that the prosecutor committed *Batson* error during jury selection. (*See* Hab. Pet. at 8-A, ¶ E; Pet. Br. at 6-7). However, petitioner subsequently withdrew that claim after respondent pointed out that it was unexhausted. (*See* Resp. Ans. at 14-17; Pet. Repl. at 10).

the time this offense was committed, capital murder was defined as, *inter alia*, intentionally or knowingly causing the death of an individual under six years of age. *See* TEX. PEN. CODE ANN. §§ 19.02(b)(1) & 19.03(a)(8) (Vernon 2003).[2]  A person is criminally responsible for the conduct of another individual if he intentionally "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or[,] . . . having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense. " *Id.*, §§ 7.02(a)(2) & (3) (Vernon 1993).  Such a legal duty applies to a stepparent who "has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child[.]" *Hawkins v. State*, 910 S.W.2d 176, 179 (Tex. App.-- Ft. Worth 1995, no pet.*), quoting* TEX. PEN. CODE ANN. § 22.04(d).

2.

At trial, several witnesses testified that petitioner had accepted responsibility for the protection, food, shelter, and medical care of his stepdaughter by taking on the role of her parent after marrying the child's mother.  Among this evidence was petitioner's role in teaching the child how to swim, dropping her off and picking her up from school, reading to her, disciplining her for misconduct, and providing her with financial support and housing. (*See* SF-VI at 21-25, 113; SF-VII at 117-19, 142-43; SF-VIII at 20-21).  At least one week before the child's death, petitioner was aware that the mother had become aggressive in beating her daughter, had been hitting her with shoes and belts, and observed the mother twist the child's arm to the point that it popped and broke. (*See* SF-VI at 112-16 & St. Exh. 3).  Petitioner saw the mother bruise the child, slap her, choke her

---

[2] Capital murder now applies to the murder of a child under 10 years of age. *See* TEX. PEN. CODE ANN. § 19.03(a)(8) (Vernon 2011).

with a plastic coat hanger, pick up and pull her by the hair, bang her head against the wall, kick her in the stomach, and hit her with a broom stick. (*See* SF-VI at 113-14 & St. Exh. 3). Despite his presence during these savage beatings, petitioner never tried to take the child out of the home or remove her to a safe environment. (*See* SF-VI at 112-16; SF-VIII at 40-43). To the contrary, petitioner admitted that he had himself hit the child in the stomach, struck her with an extension cord, and spanked her with a belt so that she would "mind her mother." (*See* SF-VI at 113-14; SF-VIII at 34, 49-50). Petitioner also prevented the child from being observed by friends and family members in her final weeks of life by repeatedly cancelling scheduled visits. (*See* SF-VI at 27-31; SF-VII at 83-84, 100-03, 133-34, 147; SF-VIII at 67-68).

On August 18, 2004, the child stopped breathing, apparently after she was beaten by her mother. (*See* St. Exh. 3). Instead of calling 911 or seeking immediate medical assistance, petitioner delayed for at least 25 minutes. (*See* SF-VI at 53; SF-VII at 148-49). In that time, petitioner claimed that he was waiting for the mother to take a shower and to change the child. (*See* SF-VI at 53-54; SF-VII at 148, 152-53). By the time the child arrived at the hospital, she had numerous severe injuries, including new and partially-healed bruises from head to toe, black and blue eyes, significant hair loss, genital bruising, whip marks on her back, a lump on her forehead, brain hemorrhaging, multiple rib fractures, injuries to her internal organs, swollen lips, blood in her stomach, fluid on the lungs, a badly swollen and broken left arm, and an infection near her arm fracture. (*See* SF-VI at 67-82, 135-40). Her brain had been starved of oxygen long enough that she was irreversibly brain dead. (*See id.* at 91-94, 137, 140, 170-71). After a court dispute, the child was taken off life support and died approximately 10 minutes later. (*See* SF-VI at 34-35). Because of the number and severity of the child's injuries, her cause of death was determined to be homicidal violence. (*See id.* at 166-67). A subsequent search of petitioner's apartment, which he shared with the child and her mother,

revealed that the floors had been recently cleaned with bleach. (*See* SF-VII at 9-10, 15, 32-32). The police also found blood stains and wet clothes throughout the apartment. (*See id.* at 11-12, 15, 18-29).

    The state appeals court determined that this evidence was legally sufficient to support petitioner's conviction for capital murder. *See Pumphrey*, 2007 WL 2052159 at *1-3. According to the court:

> [T]here was legally sufficient evidence from which the jury could find appellant had the intent to promote or assist Mother's commission of the offense. The evidence showed the child was severely and brutally beaten and whipped all over her body in the weeks before she was taken to hospital. The child's injuries would have been obvious to anyone that saw her. During this same time period, appellant and Mother were the only people who saw the child. Appellant admitted awareness of serious abuse inflicted by Mother and also admitted hitting the child himself. Appellant also attempted to explain some of the child's injuries by claiming he had witnessed the child having sexual intercourse with a demon. Additionally, neighbors had overheard appellant yelling from the apartment and specifically telling Mother to do something about the child's misbehavior. Further, when the child stopped breathing, appellant did not call 911, and instead waited until the unconscious child was dressed and Mother took a shower before driving her to the hospital. We conclude there was legally sufficient evidence from which the jury could infer appellant had the intent to promote or assist Mother's commission of the offense.

*Id.*, 2007 WL 2052159 at *3, *citing Qualley v. State,* 151 S.W.3d 655, 660 (Tex. App. -- El Paso 2004), *rev'd on other grounds,* 206 S.W.3d 624 (Tex. Crim. App. 2006). This court must defer to the state court decision unless petitioner demonstrates it was based on an unreasonable determination of the facts in light of the evidence presented at trial. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2001 (2001). Petitioner has failed to meet that heavy burden. Although petitioner claims that the state failed to prove his guilt as a primary actor or as a party, the state appeals court held that the jury could have found petitioner criminally responsible for the

mother's acts under Texas law because he exercised care, custody, and control over the child, and had a legal duty to protect the child from the mother's homicidal assault. *Pumphrey*, 2007 WL 2052159 at *3. Having carefully reviewed the record, it appears that the state court's disposition of petitioner's legal sufficiency claim is consistent with *Jackson*.

3.

To the extent petitioner challenges the factually sufficiency of the evidence, such a claim is not cognizable on federal habeas review. Under the law in effect when petitioner's appeal was decided, Texas appellate courts had the authority to review fact questions in criminal cases. *See Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996).[3] This "factual sufficiency" review of the evidence was broader than a "legal sufficiency" challenge under *Jackson. See id.* at 129. Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[,]" a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Pruitt v. Cockrell*, No. 3-00-CV-1713-H, 2001 WL 1115339 at *13 (N.D. Tex. Sept. 14, 2001), *COA denied*, No. 01-11332 (5th Cir. Jan. 18, 2002), *quoting Clewis*, 922 S.W.2d at 129. The power of state appellate courts to review the factual sufficiency of the evidence was derived from Texas statutory and constitutional authority. *Id.* at *14, *citing Clewis*, 922 S.W.2d at 129-30, *and Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994), *cert. denied*, 115 S.Ct. 2617 (1995). There is no corresponding right of review under the United States Constitution. *Id.; see also Moore*

---

[3] In *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), a plurality of the Texas Court of Criminal Appeals overruled *Clewis* and held that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 895.

*v. Thaler*, No. 3-10-CV-1005-M-BD, 2011 WL 3555830 at *2 (N.D. Tex. Jun. 20, 2011), *rec.*

*adopted*, 2011 WL 3555786 (N.D. Tex. Aug. 11, 2011), *COA denied*, No. 11-10825 (5th Cir. Mar.

9, 2012); *Daisy v. Dretke*, No. 3-04-CV-2015-D, 2004 WL 3167743 at *2 (N.D. Tex. Dec. 21, 2004)

(citing cases), *COA denied*, No. 05-10052 (5th Cir. Nov. 9, 2005).

### B.

Petitioner also alleges that he received ineffective assistance of counsel at trial.  Succinctly

stated, petitioner complains that his attorney:  (1) did not file a motion to suppress his oral and

written confessions; (2) failed to discover and call potential defense witnesses; (3) did not research

the law or make certain legal arguments; (3) failed to object to the jury charge; and (4) should have

polled the jury after the verdict was read.

### 1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably

effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*,

446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980).  To prevail on an ineffective

assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, the petitioner

must demonstrate that the performance of his attorney fell below an objective standard of

reasonableness. *Id.*, 104 S.Ct. at 2064.  Second, the petitioner must prove that he was prejudiced by

his attorney's substandard performance. *Id.* at 2067.

Where, as here, a state court has already rejected a claim of ineffective assistance of counsel,

a federal court may grant habeas relief only if the state court adjudication:

> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."  *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).  A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases), *aff'd*, 425 Fed.Appx. 298, 2011 WL 1812764 (5th Cir. May 12, 2011), *cert. denied*, 132 S.Ct. 1095 (2012).  This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."  *Id.*, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002); *see also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

2.

Petitioner complains that his attorney did not file a motion to suppress certain oral and written statements given to the police. However, the validity of those statements was fully explored at a hearing conducted by the trial court before the jury was empaneled. (*See* SF-V at 2-28). Following testimony by Dallas Police Detective Mike Kemp, defense counsel objected that petitioner's statements were the product of a custodial interrogation and were coerced. (*See id.* at 25-26). The trial court held that the statements were not made while petitioner was in custody and, therefore, were admissible. (*Id.* at 27-28). Counsel renewed his objection at trial. (*See* SF-VI at 112, 120). No further objection by counsel was required.

With respect to counsel's failure to discover and call defense witnesses, "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* Here, there is no evidence that any of the witnesses listed by petitioner, including his parole officer and a store clerk, were available to testify at trial and would have done so. Although petitioner contends that his attorney "had a list of witnesses to interview[,]" he does not identify any of those potential witnesses, set out the contents of their proposed testimony, or explain how their testimony would have been favorable to his defense. Petitioner has failed to prove ineffective assistance of counsel in this regard. *See Moore*, 2011 WL 3555830 at *5 (rejecting

ineffective assistance of counsel claim where petitioner failed to show that uncalled witnesses were available to testify, would have done so, and that their testimony was favorable to the defense).

Nor was defense counsel ineffective for failing to adequately research the law and argue that petitioner had no legal duty toward his stepdaughter, that he was not responsible for her death because she was taken off life support without his participation, and that her coma could have been reversed. As noted above, the state appeals court held that petitioner could be held criminally responsible for the child's death based on the evidence that he accepted responsibility for her care, custody, and control. *See Pumphrey*, 2007 WL 2052159 at *3. Petitioner is mistaken in his belief that he had no legal duty to his stepdaughter absent "proof that [he] did adopt or was given the legal duty by the court of law." *See, e.g. Hawkins*, 910 S.W.2d at 178-79. Similarly, there was significant testimony at trial that the child died as a result of irreversible brain damage caused by her severe injuries. (*See* SF-VI at 91-94, 169-71). The family's decision to stop further life support measures was, at most, a *concurrent* cause of the child's death -- not an *alternative* cause. *See Quintanilla v. State*, 292 S.W.3d 230, 235 (Tex. App. -- Austin, 2009, pet ref'd). Counsel was not ineffective for failing to make these frivolous arguments. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997), *cert. denied*, 119 S.Ct. 418 (1998) (failure to make a meritless objection cannot be grounds for ineffective assistance of counsel).

Petitioner also criticizes his attorney for failing to object to the jury charge and poll the jury after the verdict was read. However, petitioner does not identify any jury instruction that was improper under Texas law. Nor does he cite any legal authority requiring counsel to poll the jury. These claims do not merit habeas relief. *See Mendoza v. Dretke*, No. 3-05-CV-0042-M, 2005 WL 1124513 at *4 (N.D. Tex. May 11, 2005), *rec. adopted*, 2005 WL 1639330 (N.D. Tex. Jul. 13,

2005) (citing cases) (habeas petitioner must show how alleged errors and omissions were constitutionally deficient).

C.

Finally, petitioner contends that he is actually innocent.  A claim of actual innocence, standing alone, is insufficient to merit federal habeas relief.  *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1250 (2001), *quoting Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  There must also be evidence of an independent constitutional violation in the state criminal proceeding.  *Id.*  No such evidence exists here.

**RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  April 25, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE